___ Priority
✓ Send
___ Clsd
✓ Enter
No JS-5/JS-6
___ JS-2/JS-3

FILED
CLERK, U.S DISTRICT COURT
FEB 13 2007
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

ENTERED
CLERK, U.S DISTRICT COURT
FEB 15 2007
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSEPH GENOVA,
          Plaintiff,

     v.

COUNTY OF LOS ANGELES, a public entity, et al.
          Defendant.

CASE NO.: CV 05-2017 ABC (JWJx)

ORDER RE: MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT

Pending before the Court is Plaintiffs' Motion For Final Approval Of Class Action Settlement Agreement In Consolidated Actions Of <u>Valenzuela, Genova, et al. v. County Of Los Angeles</u> Pursuant To FRCP 23(e) & (h). The Motion came on regularly for hearing on November 27, 2006. Upon consideration of the parties' submissions, the arguments of counsel, and the case file, the Court hereby GRANTS Plaintiffs' Motion.

## I. BACKGROUND

This case was previously certified as a class on behalf of all persons who are deaf or hard of hearing, and who have interacted, or will or currently interact, with Defendant County of Los Angeles

(erroneously sued as Los Angeles County Sheriff's Department) (the "LASD"), including during investigation, arrest, booking or interrogation while in the LASD's custody. By their suit, Plaintiffs sought to ensure that LASD met its obligations under the Americans with Disabilities Act and related statutes to effectively communicate with people who are deaf and hard of hearing.

On October 2, 2006, this Court preliminarily found that the requirements of Federal Rule of Civil Procedure ("FRCP") 23(e) had been met, and preliminarily approved the class settlement. The Court also ordered that notice of the pending settlement be distributed pursuant to the settlement agreement, and set a fairness hearing on November 27, 2006 for the final approval of the settlement.

The Parties published notice of the proposed settlement, and gave notice to any of the individual Class members of whom they were aware. Counsel received three objections to the settlement. Prior to the fairness hearing, the Plaintiffs filed briefs on the sufficiency of the settlement, and responding to the objections they received. At the November 27 fairness hearing, the Court heard oral argument from the Parties' counsel and from counsel for objector Greater Los Angeles Agency on Deafness ("GLAD").

## II. LEGAL STANDARD

### A. Legal Standard For Review Of Proposed Settlement Agreement

The Ninth Circuit has acknowledged that there is an overriding public interest in settling and quieting litigation. This judicial policy in favor of settlement is particularly strong in class action suits. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) cert. denied., 506 U.S. 953 (1992). Federal Rule of Civil

Procedure 23(e) requires the parties to obtain court approval of "any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." FRCP 23(e). Court approval of a class settlement is subject to a two-step process. First, the court conducts an approval process to certify the class and lays the groundwork for the future fairness hearing. See In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 227 F.R.D. 553, 556 (W.D. Wash. 2004) (noting that in the first stage of the approval process, "the court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the Class . . ., and authorize[s] notice to be given to the Class").

Second, the court conducts a fairness hearing in which it entertains any objections made by the putative class members to (1) the treatment of this litigation as a class action and /or (2) the terms of the proposed settlement. Diaz v. Trust Territory of Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989). Following the fairness hearing the court makes a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon. Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004).

**B.    The Court Must Determine Only Whether The Settlement Agreement Is Fair, Adequate, And Reasonable**

The purpose of the fairness hearing is to permit the court to determine whether a proposed class action settlement is fundamentally fair, adequate, and reasonable. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Courts have been repeatedly cautioned not to transform the fairness hearing into a trial on the merits. Officers For Justice v. Civil Service Com'n of City and County of San

3

1  Francisco, 688 F.2d 615, 625 (9th Cir. 1982). Furthermore, courts
2  have been cautioned that,
3      Neither the trial court nor this court is to reach any ultimate
4      conclusions on the contested issues of fact and law which
5      underlie the merits of the dispute, for it is the very
6      uncertainty of outcome in litigation and avoidance of wasteful
7      and expensive litigation that induce consensual settlements. The
8      proposed settlement is not to be judged against a hypothetical or
9      speculative measure of what might have been achieved by the
10     negotiators.
11 Id. at 625; see also Fed. Rules Civ Proc. 23.
12     Thus, the analysis to be conducted by the Court is not whether
13 the settlement agreement could have been better. Rather, the role of
14 the court is to ascertain whether the proposed settlement is fair,
15 reasonable and adequate. See Hanlon v. Chrysler Corp., 150 F.3d 1011,
16 1027 (9th Cir. 1998). As the Ninth Circuit in Hanlon noted,
17 "[s]ettlement is the offspring of compromise; the question we address
18 is not whether the final product could be prettier, smarter, or
19 snazzier, but whether it is fair, adequate and free from collusion."
20 Hanlon, 150 F.3d at 1027. Ultimately the decision of whether a
21 proposed settlement agreement is fair, reasonable and adequate is to
22 be based upon the settlement as a whole, and the decision of whether
23 to approve a settlement lies within the sound discretion of the court.
24 Hanlon, 150 F.3d at 1026 (citing Officers for Justice, 688 F.2d at
25 626).
26 **C.   Standard For Determining Whether The Settlement Agreement Is**
27      **Fair, Adequate, And Reasonable**
28     The "universally applied standard" in determining whether a court

4

should grant final approval to a proposed settlement is, as discussed above, whether the settlement is fundamentally fair, adequate, and reasonable. 5 Moore Federal Practice, §23.85 (Mathew Bender 3d ed.) (citing In re Pacific Enters. Sec. Litig., 47 F.3d 373, 377 (9th Cir. 1995) and Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). The Ninth Circuit has considered, if applicable, the following eight factors in ascertaining whether a proposed class action settlement is fair, reasonable, and adequate:

(1) the strength of the plaintiff's case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status through the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed and the state of the proceedings;

(6) the experience and view of the counsel;

(7) the presence of a government participant; and

(8) the reaction of the class members to the proposed settlement.

See National Rural Telecommunications Cooperative v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004); Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998); Hanlon, 150 F.3d at 1026.

Under certain circumstances, one factor alone may be prove determinative in finding sufficient grounds for court approval. See, e.g., Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993). Additionally, "the relative degree of importance to be attached to any particular factor will depend upon and be dictated by

the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." <u>Officers For Justice</u>, 688 F.3d at 625. "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." <u>Id</u>.

In assessing the sufficiency of the settlement to address the claims of the class, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." <u>Officers for Justice</u>, 688 F.2d at 628; <u>see also</u> <u>Hanlon</u>, 150 F.3d at 1026. With respect to this criterion, it is well-settled law that "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." <u>DIRECTV</u>, 221 F.R.D at 526, <u>Linney</u>, 151 F.3d at 1242 (quoting, <u>City of Detroit</u>, 495 F.2d 448, 455 and n.2).

### III.  DISCUSSION

**A.  Terms of the Settlement**

In summary, LASD has agreed to provide effective communication and other accommodations for individuals who are deaf and hard of hearing in County of Los Angeles jails and in field interactions. Under the agreement, "effective communication" means communication that is as effective as communication with the general public, and will, when necessary, include the provision of appropriate auxiliary aids and services, such as qualified interpreters.

More specifically, the agreement ensures access to auxiliary aids and services, including on-site sign language interpreters, and establishes prioritization lists to ensure access to interpreters for

critical events. LASD will also instruct its vendors who run programs or services in jails that they must comply with the ADA and provide effective communications.

Effective communication is secured in field interactions and custodial interrogations by providing sign language interpreters, except in cases of exigent circumstances. The agreement establishes a procedure by which an interpreter will be requested and secured, with the goal of providing an interpreter on-site within an hour of the request.

LASD also agreed to maintain working TTYs/TDDs at all stations, substations, and detention facilities. Further, LASD agreed to provide ongoing training for its personnel regarding effective communication. LASD is also to provide notice of the provision of accommodations that will be readily available and in plain view at all LASD facilities that interact with the public. Finally, Class counsel Disability Rights Law Center ("DRLC") will monitor compliance with these terms though an agreement with the County of Los Angeles Office of Independent Review ("OIR"), and the Court will retain jurisdiction to enforce the settlement.

**B.    The Proposed Settlement Is Fair, Adequate, And Reasonable**

Upon review of the settlement, consideration of the objections thereto, and the legal standard the Court must apply, the Court finds that the proposed settlement agreement is fair, adequate, and reasonable.

   **1.    The Settlement is Fair, Adequate, and Reasonable in Light of the Apparent Strength of Plaintiff's Case.**

Plaintiffs believe that they would have likely prevailed at trial and contend that, based on the discovery conducted by Plaintiffs'

counsel, Plaintiffs would have likely shown sufficient facts to warrant injunctive relief in favor of the Plaintiff class, as Defendants did not produce policies and procedures to show that officers are properly trained in effectively communicating with deaf persons. Parks Decl. ¶11.[1]

In counsel's estimation, the injunctive relief in the parties' settlement far exceeds that which the Court would have ordered following a trial on the merits. Parks Decl. ¶¶11-12. Importantly, it ensures that for the next five years a sign language interpreter will be on staff in Los Angeles County Jails. It further ensures that LASD will enter into contracts with sign language interpreters to ensure that interpreting is available in the field. It entails training all LASD personnel dealing with the public. It establishes a monitoring mechanism through the OIR, the body typically charged with monitoring LASD compliance with settlement agreements and consent decrees.

    2.    **The Settlement is Fair, Adequate, and Reasonable Given the Risk, Expense, Complexity and Likely Duration of Further Litigation.**

It likely would have been expensive and time-consuming to litigate this case through trial. A full-blown trial on this matter would also entail risk and complexity, including the use of multiple expert witnesses and substantial documentary evidence. The parties thus recognized that there was much more to be gained through reasonable settlement discussions than through litigating and trying this matter . Parks Decl. ¶12. In most respects, the settlement the parties have reached accords greater protection to the Plaintiff Class

---

[1] "Parks Decl." refers to the Declaration of Shawna L. Parks submitted in support of the Motion for Preliminary Approval.

than could have been achieved at trial. It also allows the County of Los Angeles and the Los Angeles Sheriff's Department to carry on with their primary job functions unencumbered by the cloud of litigation.

### 3. The Risk of Maintaining Class Action Status Throughout the Case.

This Hanlon factor is not applicable here. The Plaintiff Class is comprised of thousands of individuals with hearing impairments. The putative class members are likely to travel in and through the County and come in contact with the LASD. The parties agreed that there is no need to redefine the Class and that the composition of the Class will not change during the Settlement period.

### 4. The Settlement is Fair, Adequate, and Reasonable, Given the Extent of Discovery and Information Exchanged Between the Parties and the Quality of the Settlement Negotiations.

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." Moore's Federal Practice, supra at §23.85 [2][e]§. But, as the Ninth Circuit recently recognized, although "extensive formal discovery had not been completed . . . 'in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement.'" In re Mego, 213 F.3d at 459 (citing Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1239 (9th Cir. 1998) and In re Chicken Antitrust Litig., 669 F.2d 228, 241 (5th Cir. 1982)).

In this case, settlement discussions occurred after lengthy discovery was conducted. As a result, the parties engaged in

substantial litigation prior to settlement discussions. The extended settlement negotiations were conducted over a substantial period of time, using both a private mediator and a magistrate judge. The discussions involved multiple face-to-face and telephonic conferences. Parks Decl. ¶¶5-7. These negotiations were conducted at arms' length with multiple lawyers representing both sides, and with the involvement of clients. Parks Decl. ¶8.

### 5. Based Upon the Experience and View of Counsel, the Settlement Is Fair, Adequate, and Reasonable.

Class settlements reached in arms-length negotiations between experienced, capable counsel after meaningful discovery are presumed correct. Manual for Complex Litigation, §30.42 (3rd ed. 1995). The Ninth Circuit recognizes that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." In re Pacific Enterprises Securities Litigation, 47 F.3d 373, 378 (9th Cir. 1995). Where counsel for both parties are "well respected in their respective fields . . . [t]heir opinion that the settlement is fair, adequate, and reasonable is entitled to significant weight." In re Manufacturers Life Ins. Co. Premium Litigation, 1998 U.S. Dist. LEXIS 23217 at 20 (S.D. Cal. 1998). The weight accorded to the recommendation of counsel depends on a variety of factors, including the particular type of litigation, and the amount of discovery completed. Newberg on Class Actions, supra at §11.47, ¶1.

In this case, Plaintiffs are represented by the Disability Rights Legal Center ("DRLC") and attorneys at law Robert Mann and Donald W. Cook. DRLC has litigated disability rights cases for over 25 years and specializes in impact litigation affecting the disability

community.  DRLC's mission is to advocate for the rights of people with disabilities and to enhance the public's interest in and awareness of those rights.

The County and Sheriff's Department are also well represented by Collins, Collins, Muir & Stewart, LLP, a long established law firm in practice for over forty years.  Among its specialties is Public Entity Law.  Thus, the parties are represented by well-established and well-respected counsel whose opinion of this settlement should be accorded great weight by the Court.

Furthermore, the parties at arms' length in an adversarial, though civil, manner for a number of months before reaching the detailed settlement agreement that provides fair, adequate, and reasonable relief to the named Plaintiffs and Class Members.  See generally Parks Decl.  In sum, the experience of the parties' counsel, and the nature and quality of their negotiations, weigh greatly in favor of the Court's approval of the settlement agreement.

### 6. The Presence of a Government Participant

The County and the Sheriff's Department are governmental entities that must rely on limited public resources to engage in this litigation.  This settlement preserves those public resources, properly balances the County's concerns with the interests of the Plaintiff Class, avoids the time and expense of further litigation and results in a benefit to the public as a whole.

### 7. The Reaction of Class Members' to the Proposed Settlement Weighs in Favor of Approval.

Notice to Class Members was provided under FRCP 23(e).  Plaintiffs received several informational inquiries about the settlement.  One class member filed a statement in support of the

11

settlement. One named class member registered an objection to the settlement. This objection is discussed at length below.

      a.    **Objections To The Settlement**

The Court must consider whether there is any opposition to the proposed settlement and the nature of any objections. Although the court must evaluate any objection made, the fact that there is opposition does not necessitate disapproval of the settlement. See Wright & Miller, 7B Fed. Prac. & Proc. Civ. 3d §1797.1§. The proportion of the class opposed to the settlement is but one factor to be considered in assessing the fairness of the settlement of a class action, but is not controlling. Bryan v. Pittsburg Plate Glass Co., 494 F.2d 799, 803 (3d Cir. 1974), certiorari denied 419 U.S. 900; see also Wright & Miller, 7B Fed. Prac. & Proc. Civ. 3D §1797.1; and League of Martin v. Milwaukee, 588 F.Supp. 1004 (D.C. Wis.1984) (noting, although the presence of objecting class members is a relevant factor in determining whether to approve a proposed settlement in a class action, it is not dispositive even when many class members object); Watson v. Ray, 90 F.R.D. 143 (D.C. Iowa 1981) (although the reaction of the class members to the settlement proposal is to be taken into account, the settlement can be found to be fair even if a substantial number of members object to it). Here, the parties received three objections to the settlement agreement.

One objection appears not to have been an objection to the settlement in issue, but rather was an objection to how Defendants had previously treated the objector. Accordingly, this objection had no bearing on the Court's determination of the fairness of the settlement.

Another objection was registered by the Greater Los Angeles

Agency on Deafness ("GLAD"). The third objection, by a plaintiff in the action, adopted GLAD's objections. GLAD is an organization that advocates on behalf of the deaf and hard of hearing community, and GLAD and Plaintiffs' counsel DRLC have worked together in the past. The Court has reviewed GLAD's objections, and finds that none of them warrant disapproval of the settlement agreement. Rather than tending to demonstrate that the settlement is unfair or inadequate, the gravamen of GLAD's objection is that the settlement could have been better for Plaintiffs' class than the agreement that was in fact reached.

For example, GLAD contends that several technological tools - such as internet-based interpretation - would better provide effective communication than in-person-only interpretation, and therefore should have been part of the settlement. However, while it is possible to identify ways in which technology could improve effective communication, the settlement's provisions are substantial. The settlement requires LASD to have interpreters on-site in certain facilities from 6:00 a.m. to 10:00 p.m., and requires LASD to establish access to interpreters who would be on-call twenty-four hours a day, seven days a week, to be summoned immediately when a deputy determines there is a need. The fact that better technology could be used does not render the actual provisions unfair in light of the Hanlon factors discussed above. The Court has similarly reviewed each of GLAD's objections, and finds that none of them show that the settlement agreement is unfair. In addition, the Court notes that the settlement agreement does not foreclose the implementation of "better" accommodations, but rather establishes a minimum level of accommodation. The Court also notes that both parties represented at

oral argument that they would welcome GLAD's participation in implementing the terms of the settlement.

Finally, the settlement provides that the Court will retain jurisdiction to enforce the terms therein. Agreement at Section XVI. The notice of dismissal will indicate that the court expressly retains jurisdiction, and it will incorporate the terms of the settlement. The Court's retention of jurisdiction should further assure the Class members and this Court that the settlement is fair and reasonable.

Accordingly, the Court finds that the settlement agreement in this matter is fair, reasonable, and adequate for members of the Class.

## C. Attorneys's Fees

Finally, the parties seek approval, under FRCP 23(h), of their separately-negotiated Plaintiffs' class counsel fees. The parties agreed to $200,000 in fees. Class counsel represents that this amount accounts for only a portion of the hours expended in the prosecution of this suit over more than four years, and is an approximate 60% discount off of their lodestar. The Court finds this fee reasonable, and, having considered the factors set forth Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), cert. denied, 425 U.S. 951 (1976), finds no reason to make any adjustments to this amount.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS the Motion. The class settlement in the above captioned consolidated actions of Valenzuela, Genova, et al. v. County of Los Angeles is approved by the Court. Because of this settlement agreement, the parties will dismiss

1 | the consolidated actions per the requirements of the settlement
2 | agreement.  Any dismissal will expressly incorporate the terms of the
3 | agreement and expressly state that this Court will retain jurisdiction
4 | of the case for purposes of enforcement.

**SO ORDERED.**

DATED:  February 13, 2007

*/s/ Audrey B. Collins*

**AUDREY B. COLLINS**
**UNITED STATES DISTRICT JUDGE**